UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASON DAVIS, et al.,

           Plaintiffs,

v.

NATIONSTAR MORTGAGE, LLC, et al.,

           Defendants.

No.  2:16-cv-2599 KJM CKD PS

FINDINGS AND RECOMMENDATIONS

Defendants Nationstar Mortgage, LCC's ("Nationstar"), Mortgage Electronic Registration Systems, Inc.'s ("MERS"), and Barrett Daffin Frappier Tredder & Weiss, LLP's ("BDFTW")[1] motion to dismiss came on regularly for hearing December 7, 2016.  ECF Nos. 7, 12.  Also before the court was defendants Ocwen Loan Servicing, LLC's ("Ocwen") and Indymac Bank, F.S.B.'s ("Indymac") motion for judgment on the pleadings.[2]  ECF No. 10.  Plaintiff Jason Davis appeared

---

[1] Although not initially a party to Nationstar's and MERS's motion to dismiss, BDFTW filed a notice of joinder to the motion on November 17, 2016, based on the assertion that the grounds for dismissal asserted in the motion as to those two defendants was equally applicable to BDFTW. ECF No. 12.

[2] Although Ocwen is the only party specifically named as movant with respect to this motion, this motion was filed by counsel representing both Ocwen and Indymac in this action and advances

1

1  in propria persona, and plaintiff Joann Davis appeared telephonically.  Diane Cragg appeared

2  telephonically for defendants Nationstar and MERS.   James Lee appeared telephonically on

3  behalf of defendant BDFTW.  Dhruv Sharma appeared telephonically on behalf of defendants

4  Ocwen and Indymac.

5         Upon review of the documents in support and opposition, upon hearing the arguments of

6  plaintiff and counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

7    I.      Background

8       A.  Procedural History

9         Plaintiffs, who are proceeding without counsel in this action, filed their complaint on

10  September 13, 2016 in the Yolo County Superior Court, naming Nationstar, MERS, BDFTW,

11  Ocwen, and Indymac as defendants.  ECF No. 1-1.  While the case was pending in the state court,

12  BDFTW timely filed a declaration of non-monetary status pursuant to California Civil Code §

13  2924l, and, therefore, is only a nominal party to this action not subject to monetary damages.[3]

14  ECF No. 1-3.

15  /////

16  

17  arguments for why Indymac should be dismissed from this action that are specific to that
    defendant.  Accordingly, the court construes this motion as having been filed by both Ocwen and
18  Indymac.

19  [3] Pursuant to California Civil Code § 2924l, a trustee may file a declaration of nonmonetary status
    "[i]n the event that it is named in an action in which that deed of trust is the subject, and in the
20  event that the trustee maintains a reasonable belief that it has been named in the action solely in
    its capacity as trustee, and not arising out of any wrongful acts or omissions on its part in the
21  performance of its duties as trustee."  Cal. Civ. Code § 2924l(a).  In the event that no objection is
    served within 15 days plus 5 days from the date of service, the trustee shall not be required to
22  participate in the action and shall not be subject to any damages.  Id. at § 2924l(b), (d).  Here,
    plaintiffs' allegations indicate that BDFTW was acting as trustee with regard to the deed of trust
23  at issue in this action.  E.g., ECF No. 1-1 at 8-10, 53 (attached document showing BDFTW was
    substituted in as trustee under the Deed of Trust).  Furthermore, BDFTW's declaration
24  demonstrates that it was appointed as the substitute trustee under the deed of trust at issue in this
    action through a document recorded with the Yolo County Recorder's Office on April 6, 2016.
25  ECF No. 1-3.  The record reflects that plaintiffs never objected to BDFTW's declaration of
    nonmonetary status.  Accordingly, the court recognizes that BDFTW is a nominal party to this
26  action not subject to plaintiffs' claims for monetary damages.  Bae v. T.D. Serv. Co., 245 Cal.
    App. 4th 89, 105 (Cal. Ct. App. 2016) ("An unchallenged declaration thus renders the trustee a
27  nominal defendant not subject to a judgment for damages.").

28

1    The action was subsequently removed to this court by defendants pursuant to this court's

2    diversity jurisdiction.[4]  (ECF No. 1.)  On November 7, 2016, defendants Nationstar and MERS

3    filed a motion to dismiss, which defendant BDFTW subsequently joined.  ECF Nos. 7, 12.  On

4    November 9, 2016, defendants Ocwen, and Indymac filed a motion for judgment on the

5    pleadings.  ECF No. 10.  Plaintiffs filed an opposition to these motions.[5]  ECF No. 15.

6        B.  Factual Allegations

7        On December 24, 2007, plaintiffs borrowed $391,000.00 from Indymac as a mortgage

8    loan, which was made pursuant to a written promissory note secured by a deed of trust ("DOT")

9    against real property located at 106 Riverview Court, Winters, California 95694 ("Riverview

10   _____

[4] In their opposition to defendants' motions, plaintiffs assert that this action was improperly

11   removed to federal court because the court does not have subject matter jurisdiction over this
     case.  This argument is not well taken as this action clearly falls within this court's diversity of

12   citizenship jurisdiction under 28 U.S.C. § 1332.  The mortgage loan secured by the deed of trust
     at issue in this action is alleged to have been $391,000.00, well in excess of the over $75,000

13   amount in controversy requirement.  ECF No. 1-1 at 8.  Furthermore, the parties are of diverse
     citizenship.  The notice of removal demonstrates that plaintiffs are residents of California, Ocwen

14   is a citizen of Florida and Georgia, Nationstar is a citizen of Delaware and Texas, MERS is a
     citizen of Delaware and Virginia.  ECF No. 1 at 3-4.  While defendants represent that BDFTW is

15   a citizen of California by virtue of some of its partners residing in that state, that defendant's
     citizenship is not considered for purposes of diversity due to its nominee status under Cal. Civ.

16   Code § 2924l.  E.g., Shawcroft v. Roundpoint Mortgage Servicing Corp., 2015 WL 6875097, at
     *3 (E.D. Cal. Nov. 10, 2015) ("A defendant filing a [declaration of nonmonetary status] to which

17   no objection is made is deemed a nominal party whose citizenship need not be considered for
     purposes of diversity jurisdiction."); see also Prudential Real Estate Affiliates, Inc. v. PPR Realty,

18   Inc., 204 F.3d 867, 873 (9th Cir. 2000) ("We will ignore the citizenship of nominal . . . parties
     who have no interest in the action, and are merely joined to perform the ministerial act of

19   conveying the title if adjudged to the complainant.").  Similarly, Indymac's citizenship, which
     defendants do not identify in their notice of removal and plaintiffs appear to allege to be a citizen

20   of California, is not considered for purposes of diversity jurisdiction because it is a fraudulently
     joined party to this action for the reasons discussed in further detail below.  See Ritchey v.

21   Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently
     joined defendants will not defeat removal on diversity grounds.").  Plaintiffs provide nothing to

22   dispute defendants' representations beyond their conclusory argument that the court lacks subject
     matter jurisdiction.  Accordingly, the court finds that this action was properly removed on the

23   basis of diversity jurisdiction.

24   [5] Plaintiffs' opposition is nominally addressed to only Nationstar's, MERS's, and BDFTW's

25   motion to dismiss.  However, therein, plaintiffs provide arguments against all defendants and also

26   appear to address the substance of Ocwen's and Indymac's motion for judgment on the pleadings.

27   Accordingly, the court construes plaintiffs' opposition as an opposition to both motions presently
     before the court.

28

Property"). ECF No. 1-1 at 8, 35-57. The deed of trust named Indymac as the lender, First American Title Insurance Co. as trustee, and MERS as the beneficiary "acting solely as nominee for the Lender and the Lender's successors and assigns." Id. at 35. On August 6, 2015, a corporate assignment of the DOT was recorded in the Yolo County Recorder's Office showing that MERS, acting solely as nominee for the lender, Indymac, assigned all beneficial interest under the DOT to Ocwen. Id. at 49. On April 5, 2016, a second corporate assignment of the DOT was recorded in the Yolo County Recorder's Office showing that Ocwen assigned all beneficial interest under the DOT to Nationstar. Id. at 51. On April 7, 2016, a substitution of trustee was recorded in the Yolo County Recorder's Office showing that BDFTW was substituted in as trustee under the DOT. Id. at 53.

On April 12, 2016, a Notice of Default and Election to Sell under the DOT was recorded by BDFTW in the Yolo County Recorder's Office, which stated that plaintiffs were in default under the loan and were behind on payments in the amount of $18,891.61 as of April 8, 2016. Id. at 55-57. On July 25, 2016, BDFTW recorded a Notice of Trustee's Sale in the Yolo County Recorder's Office, with the sale set to occur on August 29, 2016. Id. at 59-60.

Plaintiffs allege that each of the alleged assignments set forth above were made without the authority to make such a transfer, therefore resulting in defendants lacking the authority to further assign any interest in the DOT, or to collect on the mortgage note or enforce the DOT. Id. at 8-11. Plaintiffs also allege that the Notice of Default recorded on April 12, 2016 "is false because it fails to accurately depict the amount of Plaintiffs['] indebtedness if any." Id. at 9. Plaintiffs allege further that defendants failed to contact plaintiffs in person or by telephone to discuss their options in avoiding foreclosure prior to the date the notice of default was recorded. Id. at 7-8.

Based on these allegations plaintiffs assert the following 12 causes of action for: (1) violations of California's Homeowners Bill of Rights; (2) negligence; (3) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (4) injunctive relief; (5) fraud in the concealment; (6) fraud in the inducement; (7) predatory lending practices; (8) constructive fraud; (9) slander of title; (10) quiet title; (11) rescission; and (12)

4

declaratory relief.  Id. at 12-32.

II.     Defendants' Motions

A.  Legal Standards

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), and construe the pleading in the light most favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  The court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a claim upon which the court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

A motion to dismiss pursuant to Rule 12(b)(6) may also challenge a complaint's compliance with Federal Rule of Civil Procedure 9(b) where fraud is an essential element of a claim.  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).  Rule 9(b), which provides a heightened pleading standard, states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). These circumstances include the "'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged"). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns, 567 F.3d at 1124.

"A Rule 12(c) motion [for judgment on the pleadings] challenges the legal sufficiency of the opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6)." Morgan v. County of Yolo, 436 F.Supp.2d 1152, 1154-55 (E.D. Cal. 2006). Analysis under Rule 12(c) is "substantially identical" to analysis under Rule 12(b)(6) because under both rules a court determines whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy. Chavez v. U.S., 683 F.3d 1102, 1108 (9th Cir. 2012). Similar to a Rule 12(b)(6) motion to dismiss, when addressing a motion for judgment on the pleadings, a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Also similar to a Rule 12(b)(6) motion, the court may take into account materials to which it can take judicial notice in addition to considering the allegations of the complaint. Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981, n.18 (9th Cir. 1999). In short, a motion for judgment on the pleadings may be granted if, after assessing the complaint and matters for which judicial notice is proper, it appears "beyond doubt that the [non-moving party] cannot prove any facts that would support his claim for relief." Morgan v. County of Yolo, 436 F.Supp.2d 1152, 1155 (E.D. Cal. 2006), aff'd, 277 F. App'x 734 (9th Cir. 2008); R.J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers, Local 150, AFL-CIO, 335 F.3d 643, 647 (7th Cir. 2003).

B. <u>Requests for Judicial Notice</u>

Defendants request that the court take judicial notice of documents allegedly related to plaintiffs' claims.  Plaintiffs do not dispute defendants' requests.

Specifically, defendants Nationstar and MERS request the court to take judicial notice of the following: (1) Deed of Trust, dated December 24, 2007, and recorded in the Yolo County Recorder's Office on January 2, 2008, as DOC-2008-0000023-00; (2) Corporate Assignment of Deed of Trust recorded in the Yolo County Recorder's Office on August 6, 2015, as DOC-2015-0022026-00; (3) Corporate Assignment of Deed of Trust recorded in the Yolo County Recorder's Office on April 5, 2016, as DOC-2016-0008548-00; (4) Substitution of Trustee recorded in the Yolo County Recorder's Office on April 7, 2016, as DOC-2016-0008864-00; (5) Notice of Default and Election to Sell Under Deed of Trust recorded in the Yolo County Recorder's Office on April 12, 2016, as DOC-2016-0009209-00; and (6) Notice of Trustee's Sale recorded in the Yolo County Recorder's Office on July 25, 2016, as DOC-2016-0019960-00.  ECF No. 8.

Defendant Ocwen requests the court to take judicial notice of the following: (1) Office of Thrift Supervision Order No. 2008-24, dated July 11, 2008; (2) Excerpts from Master Purchase Agreement by and among the Federal Deposit Insurance Corporation, as conservator for Indymac Federal Bank, FSB, IMB HoldCo LLC, and OneWest Bank Group, LLC, dated March 18, 2009; (3) Excerpts from Servicing Business Asset Purchase Agreement by and between the Federal Deposit Insurance Corporation, as Receiver for Indymac Federal Bank, FSB and OneWest Bank, FSB, dated March 19, 2009; (4) Notice of Default and Election to Sell Under Deed of Trust, recorded in the Official Records of Yolo County, California, on April 12, 2016, as document number 20160009209; and (6) List of mortgage servicers that have foreclosed on more than 175 residential real properties located in California during the applicable reporting period, as published by the California Department of Business Oversight, available at: http://www.dbo.ca.gov/Laws_&_Regs/legislation/ca_foreclosure_reduction_act.asp.  ECF No. 11.

/////

/////

A judicially noticed fact must be one not subject to reasonable dispute in that it is either "(1) generally known within the territorial jurisdiction of the trial court or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). Judicially noticed facts often consist of matters of public record. For instance, "[j]udicial notice is appropriate for records and 'reports of administrative bodies.'" United States v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008) (quoting Interstate Natural Gas Co. v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir. 1954)).

Generally, a court may not consider material beyond the complaint in ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or motion for judgment on the pleadings pursuant to Rule 12(c). Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). "However, '[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment,' as long as the facts noticed are not 'subject to reasonable dispute.'" Intri-Plex Technologies, Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting Lee, 250 F.3d at 689 (citation omitted)); see also United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003).

The court finds that judicial notice of the documents from the Office of Thrift Supervision ("OTS"), Federal Deposit Insurance Corporation ("FDIC"), and California Department of Business Oversight is proper as these documents are public records containing facts capable of accurate and ready determination by a source whose accuracy cannot be questioned. See Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (taking judicial notice of agreements to which the government was a party); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 1982); Esparza v. Indymac Bank, F.S.B., 2010 WL 2925391, at *3 (N.D. Cal. July 26, 2010) (taking judicial notice of the OTS Order appointing the FDIC as Receiver of Indymac); Ibarra v. Loan City, 2010 WL 415284, at 3 (S.D. Cal. January 27, 2010) (taking judicial notice of an OTS Order); Salazar v. Trustee Corps, 2009 WL 690185, at 2 n. 2 (S.D. Cal. March 12, 2009) (taking judicial notice of an OTS Order appointing the FDIC as

8

1   receiver).

2           Similarly, the documents recorded in the Yolo County Recorder's Office, i.e., the DOT,

3   Assignments under the DOT, Substitution of Trustee under the DOT, Notice of Default and

4   Election to Sell Under the DOT, and Notice of Trustee's Sale, are all public records from a source

5   whose accuracy cannot be reasonably questioned; therefore they are the proper subject of judicial

6   notice.[6]  See, e.g., Grant v. Aurora Loan Servs., Inc., 736 F. Supp. 2d 1257, 1264 (C.D. Cal.

7   2010) (taking judicial notice of records of county recorder); Fimbres v. Chapel Mortgage Corp.,

8   2009 WL 4163332, at *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust,

9   notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee,

10  as each was a public record); Maguca v. Aurora Loan Services, 2009 WL 3467750, at *2 n. 2

11  (C.D. Cal. Oct. 28, 2009) ("The Court takes judicial notice of the notice of default, as it is a

12  public record"); Angulo v. Countrywide Home Loans, Inc., 2009 WL 3427179, at *3 n. 3 (E.D.

13  Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record. As

14  such, this court may consider these foreclosure documents.").

15          Accordingly, the court grants defendants' requests for judicial notice.

16          C.  Claims Asserted Against Indymac

17          As an initial matter, defendants argue that plaintiffs' claims against Indymac are barred as

18  a matter of law due to defendant's status as a failed bank under receivership of the FDIC.[7]  The

19  judicially-noticed documents show that Indymac was closed by the OTS on July 11, 2008, and the

20  FDIC was appointed as its receiver.  ECF No. 11-1.  The Financial Institutions Reform,

21  Recovery, and Enforcement Act of 1989 ("FIRREA") granted this power to the FDIC to act as

22  receiver for failed financial institutions and created a mandatory administrative claims process for

23  claims against such institutions under its recievership.  Pursuant to 12 U.S.C. §§ 1821(d)(3)(A)

24  and (d)(5)(D), the FDIC has the power to determine claims as filed by claimants with the

_____

25  [6] While these documents are also attached to the complaint, the court still takes judicial notice of

26  them as such notice is proper and it appears that some of the documents attached to the complaint
    are incomplete copies of these documents, while the documents for which defendants seek

27  judicial notice appear to be complete copies of those same documents.

28  [7] The complaint also refers to Indymac as a "defunct banking corporation."  ECF No. 1-1 at 6.

receiver.  Under § 1821(d)(13)(D), courts have no jurisdiction over claims against the failed bank

unless jurisdiction is otherwise authorized in section 1821(d).  Section 1821(d)(6) provides as

follows:

> (6) Provision for agency review or judicial determination of claims
>
> (A) In general
>
> Before the end of the 60-day period beginning on the earlier of-
>
> (i)   the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or
>
> (ii)  the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(I) the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A).  Courts have no jurisdiction over claims against a failed institution

until after the claims process has been completed.  McCarthy v. F.D.I.C., 348 F.3d 1075, 1077-78

(9th Cir. 2003).  "FIRREA's exhaustion requirement applies to any claim or action respecting the

assets of a failed institution for which the FDIC is receiver."  Id. at 1081; 12 U.S.C. § 1821(d)(13)

(D).  The Ninth Circuit Court of Appeals has further held that claimants who challenge post-

receivership conduct by the FDIC as receiver must also exhaust administrative remedies.

McCarthy, 348 F.3d at 1081.

     Here, plaintiffs do not allege that they have presented their claims against Indymac to the

FDIC or otherwise satisfied the administrative exhaustion requirement prior to filing this action.

Accordingly, the court lacks jurisdiction to hear plaintiffs' claims against Indymac.  Furthermore,

plaintiffs' claims against Indymac fail to state a cognizable claim for relief for the reasons

////

1 discussed below with regard to all defendants.[8]  Accordingly, plaintiffs' claims against Indymac

2 should be dismissed from this action without leave to amend.

3     D.  Plaintiffs' Claims Against All Defendants

4         1.  Claims Under California's Homeowner's Bill of Rights

5     First, plaintiffs assert that all defendants violated certain provisions of California's

6 Homeowner's Bill of Rights through their involvement in originating, servicing, and attempting

7 to foreclose on the mortgage on the real property at issue.  Specifically, plaintiffs allege that

8 defendants violated California Civil Code § 2923.5's requirement that a mortgage loan servicer or

9 lender contact a borrower prior to engaging in foreclosure proceedings in order assess the

10 borrower's financial situation and explore alternatives to foreclosure.

11     California Civil Code § 2923.5 requires a mortgage servicer, mortgagee, trustee,

12 beneficiary, or authorized agent to contact a borrower "in order to assess the borrower's financial

13 situation and explore options for the borrower to avoid foreclosure" before recording a notice of

14 default against the borrower.  Cal. Civ. Code § 2923.5(a)(2).  Failure to comply with this

15 requirement is excused if the borrower could not be reached despite the lender's or servicer's

16 "due diligence," as defined in the statute.  Id. § 2923.5(e).  A mortgagee or beneficiary has

17 satisfied the due diligence requirement if it was not able to contact the borrower after: (1) mailing

18 a letter containing certain information; (2) then calling the borrower "by telephone at least three

19 times at different hours and on different days"; (3) mailing a certified letter, with return receipt

20 requested, if the borrower does not call back within two weeks; (4) providing a telephone number

21 to a live representative during business hours; and (5) posting a link on the homepage of its

22

---

[8] As noted above, Indymac was fraudulently joined as a defendant to this action.  A non-diverse
23 defendant is fraudulently joined if it can show that "the plaintiff fails to state a cause of action
against a resident [non-diverse] defendant."  McCabe v. General Foods Corp., 811 F.2d 1336,
24 1339 (9th Cir. 1987).  The Ninth Circuit Court of Appeals has held that fraudulent joinder occurs
when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is
25 obvious according to the settled rules of the state . . . ."  Ritchey v. Upjohn Drug Co., 139 F.3d
1313, 1318 (9th Cir.1998).  Because plaintiffs fail to show that they have exhausted their
26 administrative remedies with the FDIC and clearly fail to state a cognizable claim under
California state law against Indymac, or any defendant, for the reasons discussed below, the court
27 finds that Indymac was fraudulently joined as a defendant to this action for purposes of
determining whether removal was proper.

28

1    Internet Web site with certain information.  Id.

2           Under section 2923.5, a mortgagee, servicer, beneficiary, or trustee may file a notice of

3    default only thirty days after it either made the initial contact with the borrower or satisfied the

4    "due diligence" requirements.  Id. § 2923.5(a)(1).  That party must also provide a declaration

5    along with the notice of default stating that the buyer had been contacted or could not be reached

6    despite the lender's or servicer's exercise of due diligence.  Id. § 2923.5(b).  The sole remedy for

7    noncompliance with the procedural requirements of section 2923.5 is postponement of a

8    foreclosure sale until there has been compliance with the statute.  Argueta v. J.P. Morgan Chase,

9    787 F. Supp. 2d 1099, 1107 (E.D. Cal. 2011) (The only remedy for violation of [California Civil

10   Code § 2923.5] is postponement of a foreclosure sale until there has been compliance with the

11   statute."); Skov v. U.S. Bank Nat. Assn., 207 Cal. App. 4th 690, 696 (Cal. Ct. App. 2012) ("The

12   only remedy for noncompliance with [California Civil Code § 2923.5] is the postponement of the

13   foreclosure sale."); Mabry v. Super. Ct., 185 Cal. App. 4th 208, 223 (Cal. Ct. App. 2010) ("If

14   section 2923.5 is not complied with, then there is no valid notice of default, and without a valid

15   notice of default, a foreclosure sale cannot proceed. The available, existing remedy is . . . to

16   postpone the sale until there has been compliance with section 2923.5."); see also Benson v.

17   Ocwen Loan Servicing, LLC, 562 Fed. App'x 567, 570 (9th Cir. 2014) (unpublished)

18   ("[Plaintiff's section 2923.5] claim fails because the foreclosure sale has already occurred, and

19   therefore [plaintiff] has no available remedy.").

20          Here, plaintiffs merely allege that defendants did not contact them prior to recording the

21   Notice of Default.  ECF No. 1-1 at 9, 12-13.  The judicially-noticed Notice of Default includes a

22   declaration representing that defendant Nationstar, the alleged mortgage servicer at the time the

23   Notice of Default was recorded,[9] "tried with due diligence to contact [plaintiffs] as required by

24   California Civil Code § 2923.55(f), but has not made contact despite such due diligence," and that

25   "30 days, or more, have passed since these due diligence efforts were satisfied."  ECF No. 8 at 33.

26   The "due diligence" requirements of section 2923.5(e) and section 2923.55(f) are exactly the

27   _____

28   [9] The documents attached to the complaint demonstrate that Nationstar was the loan servicer at
     the time the Notice of Default and Notice of Trustee's Sale were recorded.

same.[10]  Compare Cal. Civ. Code § 2923.5(e) with id. § 2923.55(f).  Accordingly, the judicially noticed facts demonstrate that the mortgage servicer still complied with the requirements of section 2923.5, despite allegedly failing to contact plaintiffs prior to recording the Notice of Default.  Therefore, the factual allegations of the complaint demonstrate that plaintiffs cannot succeed on their claim that defendants violated section 2923.5 as a matter of law.  Accordingly, plaintiffs' Homeowner's Bill of Rights claim should be dismissed.[11]

> 2.  Negligence

Second, plaintiffs assert a cause of action for negligence against all defendants based on the allegation that defendants "breached their duty of care and skill to Plaintiff[s] in the servicing of Plaintiffs' loan by, among other things, failing to properly and accurately credit payments made by plaintiffs toward the loan, preparing and filing false documents, and foreclosing on the Subject Property without having the legal authority and/or proper documentation to do so."  ECF No. 1-1 at 14.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."  Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339 (Cal. Ct. App.

---

[10] The requirements of § 2923.5 apply only to loan servicers who have conducted 175 or fewer foreclosures during the preceeding annual reporting period, while § 2923.55 applies to servicers who have conducted more than 175 foreclosures during such a period.  See Cal. Civ. Code §§ 2923.5(g); 2923.55(g); 2924.18(b).  Here, the judicially noticed facts show that Nationstar conducted more than 175 foreclosures in the 2012 calendar year, ECF No. 11-5, several years before the alleged Notice of Default was recorded.  Accordingly, the court cannot definitively determine at this juncture whether Nationstar was subject to § 2923.5 or § 2923.55 at the time it allegedly recorded the Notice of Default against plaintiffs' property.  Nevertheless, because the "due diligence" standards are exactly the same under both statutes, the court does not need to address whether plaintiffs' claim under § 2923.5 would be more appropriately asserted under § 2923.55 for purposes of analyzing defendants' present motions.

[11] Plaintiffs also appear to allege that defendants recorded a "fraudulent and forged" DOT on the real property at issue, therefore constituting a "material violation" of California's Homeowner's Bill of Rights and triggering the injunctive relief provisions set forth in California Civil Code §§ 2924.12, 2924.17.  ECF No. 1-1 at 13.  However, plaintiffs' conclusory allegation that the DOT was "fraudulent and forged," standing alone, is insufficient to state a cognizable claim for the reasons discussed in further detail below with regard to plaintiffs' fraud claims.  Accordingly, plaintiffs' Homeowner's Bill of Rights claim is also deficient insofar as it is based on that allegation.

1998) (citation omitted).  "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence."  Nymark v. Heart Fed. Savings & Loan Assn., 231 Cal. App. 3d 1089, 1095 (Cal. Ct. App. 1991).  "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant."  Software Design & Application, Ltd. v. Hoefer & Arnett, Inc., 49 Cal. App. 4th 472, 481 (Cal. Ct. App. 1996).  "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide."  Vasquez v. Residential Investments, Inc., 118 Cal. App. 4th 269, 278 (Cal. Ct. App. 2004) (citation omitted).

   "The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others . . . .  In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm."  McGettigan v. Bay Area Rapid Transit Dist., 57 Cal. App. 4th 1011, 1016-17 (Cal. Ct. App. 1997).

   Generally, under California law, there are no duties owed by a lender to a borrower beyond those expressed in the loan agreement when loan transactions are arms-length.  Resolution Trust Corp. v. BVS Dev., 42 F.3d 1206, 1214 (9th Cir. 1994) (citing Nymark, 231 Cal. App. 3d at 1096).  "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'"  Wagner v. Benson, 101 Cal. App. 3d 27, 35 (Cal. Ct. App. 1980); Nymark, 231 Cal. App. 3d at 1096 ("[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."); see also Myers v. Guarantee Sav. & Loan Assn., 79 Cal. App. 3d 307, 312 (Cal. Ct. App. 1978) (no lender liability when lender did not engage "in any activity outside the scope of the normal activities of a lender of construction monies").

   Here, with regard to plaintiffs' claim that defendants breached a duty with regard to their conduct in lending and servicing the mortgage loan, and in their attempts to foreclose on the property at issue, the allegations  show that defendants owed no such duty to plaintiffs as a matter of law.  See, e.g., Flores v. EMC Mortg. Co., 997 F. Supp. 2d 1088, 1113-14 (E.D. Cal.  2014)

1    (quoting Shepherd v. American Home Mortg. Services, Inc., 2009 WL 4505925, at *2 (E.D. Cal.

2    2009) ("'[L]oan servicers do not owe a duty to the borrowers of the loans they service.'"); Dooms

3    v. Federal Home Loan Mortgage Corp., 2011 WL 1232989, at *12 (E.D. Cal. Mar. 31, 2011)

4    ("The [lender] owed no duty of care to [the borrower] arising from her default, property

5    foreclosure, and loan modification attempts"); Huerta v. Ocwen Loan Servicing, Inc., 2010 WL

6    728223, at *4 (N.D. Cal. 2010) ("[A] loan servicer has no fiduciary duty to a borrower when its

7    involvement in the transaction does not exceed the scope of its conventional role as a loan

8    servicer.").  Plaintiffs' allegations establish that none of defendants' actions reached beyond the

9    scope of the conventional role of a money lender or loan servicer.  As a result, defendants owed

10   no duty to plaintiffs with regard to their conduct alleged in the complaint, and they cannot be held

11   liable for negligence as a matter of law.  Accordingly, plaintiffs' negligence claim should be

12   dismissed.[12]

13            3.   Claim for Violations of California Business and Professions Code § 17200, et seq.

14            Third, plaintiffs assert that defendants' conduct violated California Business and

15   Professions Code § 17200, et seq., California's Unfair Competition Law ("UCL").  To prove a

16   claim under the UCL, a plaintiff must show "that the defendant committed a business act that is

17   either fraudulent, unlawful, or unfair."  Levine v. Blue Shield of California, 189 Cal. App. 4th

18   1117, 1136 (2010).  "A defendant cannot be liable under § 17200 for committing 'unlawful

19   business practices' without having violated another law."  Ingels v. Westwood One Broad. Servs.,

20   Inc., 129 Cal. App. 4th 1050, 1060 (Cal. Ct. App. 2005).  Accordingly, a UCL claim based on

21   such an allegation must rest on a violation of some independent substantive statute, regulation or

22   case law.  See Farmers Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383 (1992) (action under

23   section 17200 borrows violations of other laws).  Business conduct is "unfair" under the UCL,

24   when it "offends an established public policy or . . . is immoral, unethical, oppressive,

25   unscrupulous or substantially injurious to consumers."  People v. Casa Blanca Convalescent

26   ───────────────────────
[12] Plaintiffs also allege that defendants "each owed a duty of care to ensure they do not defraud
27   the Plaintiff[s]."  Id.  However, for the reasons discussed below with regard to plaintiffs' fraud
     claims, plaintiffs fail to allege in their complaint a cognizable claim that any defendant defrauded
28   plaintiffs.

1   Homes, Inc., 159 Cal. App. 3d 509, 530 (Cal. Ct. App. 1984).  A business act is "fraudulent"

2   within the meaning of the UCL if it is "likely to deceive the public."  McKell v. Washington

3   Mutual, Inc., 142 Cal. App. 4th 1457, 1471 (Cal. Ct. App. 2006).  In asserting a claim under the

4   UCL's "fraudulent" prong in federal court, a plaintiff must plead facts that meet the particularity

5   requirements of Federal Rule of Civil Procedure 9(b).  See Kearns v. Ford Motor Co., 567 F.3d

6   1120, 1127 (9th Cir. 2009).

7          Because plaintiffs' UCL claim is predicated on the same conduct giving rise to plaintiffs'

8   other causes of action and the complaint fails to state a cognizable action for any of those claims

9   for the reasons discussed both above and below, plaintiffs' UCL claim is not cognizable as a

10  matter of law insofar as it is based on an "unlawful business practice."  Similarly, plaintiffs'

11  allegations demonstrate that their UCL claim fails as a matter of law to the extent it is based on

12  allegations that defendants' conduct was "unfair" or "fraudulent."  The factual allegations, that

13  defendants attempted to foreclose on the Riverview Property after plaintiffs defaulted on their

14  mortgage loan, demonstrate that defendants' conduct was neither "likely to deceive the public,"

15  as it was not in any manner deceptive, or "immoral, unethical, oppressive, unscrupulous or

16  substantially injurious to consumers."[13]  McKell, 142 Cal. App. 4th at 1471; Casa Blanca

17  Convalescent Homes, Inc., 159 Cal. App. 3d at 530.  Accordingly, plaintiffs' UCL claim should

18  be dismissed.

19              4.  Claim for Injunctive Relief

20          For their fourth cause of action, plaintiffs request both preliminary and permanent

21  injunctive relief preventing defendants from foreclosing on the Riverview Property.  As an initial

22  matter, plaintiffs' request for a preliminary injunction fails to comply with this court's Local Rule

23  231(d).  Furthermore, in order to obtain preliminary injunctive relief, plaintiffs must show they

24  are likely to succeed on the merits of their claims.  See Winter v. Natural Res. Def. Council, Inc.,

25  555 U.S. 7, 22 (2008).  For the reasons discussed both above and below, the court finds that

26  plaintiffs' complaint fails to state even a single cognizable claim for relief.  Accordingly,

27  _____

28  [13] Nor do plaintiffs' allegations meet the particularity requirements under Rule 9(b) for the
    reasons discussed below with regard to plaintiffs' fraud claims.

1    plaintiffs fail to demonstrate that they are entitled to preliminary injunctive relief.

2        With regard to plaintiffs' claim for permanent injunctive relief, numerous federal courts

3    have held that "injunctive relief is a remedy that derives from the underlying claims, not an

4    independent claim." Bridgeman v. United States, 2011 WL 221639, at *17 (E.D. Cal. Jan. 21,

5    2011); see also Lane v. Vitek Real Estate Indus. Group, 713 F. Supp. 2d 1092, 1104 (E.D.

6    Cal.2010); Hafiz v. Greenpoint Mortgage Funding, Inc., 652 F. Supp. 2d 1039, 1049 (N.D. Cal.

7    2009); Schimsky v. U.S. Ofc. of Personnel Mgmt., 587 F. Supp. 2d 1161, 1168 (S.D. Cal. 2008);

8    Cox Comm'n PCS, L.P. v. City of San Marcos, 204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002);

9    accord Marlin v. Aimco Venezia, LLC, 154 Cal. App. 4th 154, 162 (Cal. Ct. App. 2007).  For this

10    reason alone, plaintiffs' "claim" for injunctive relief is not cognizable in the manner plaintiffs

11    assert it in their complaint, i.e., as its own separate claim.  Furthermore, as discussed both above

12    and below, plaintiffs' other claims do not provide an underlying basis to support their request for

13    injunctive relief.  Accordingly, the court recommends plaintiffs' claim for injunctive relief be

14    dismissed.[14]

15        5.   Fraud Claims

16        Plaintiffs' fifth, sixth, and eighth causes of action are for fraud in the concealment, fraud

17    in the inducement, and constructive fraud, respectively.  With regard to their fraud in the

18    concealment claim, plaintiffs allege that "[d]efendants concealed the fact that the Loans were

19    securitized as well as the terms of the Securitization Agreements," thereby "conceal[ing] the fact

20    that [plaintiffs'] loan changed in character inasmuch as no single party would hold the Note but

21    rather the Notes would be included in a pool with other notes, split into tranches, and multiple

22    investors would effectively buy shares of the income stream from the loans."  ECF No. 1-1 at 21.

23    With regard to their claim for fraud in the inducement, plaintiffs allege that defendants

24    "intentionally misrepresented to Plaintiffs" that they had the right "to exercise the power of sale

25    provision contained in the Deed of Trust," when they had "no legal, equitable,or pecuniary

---

26    [14] While the court recommends that plaintiffs' claim for injunctive relief be dismissed insofar as it

27    is asserted as its own independent claim, this does not mean that plaintiffs could not conceivably be entitled to such relief in the event they are able to assert a cognizable cause of action in their

28    amended pleading that warrants such a remedy.

1    interest in" that debt.  Id. at 22-23.  With regard to their constructive fraud claim, plaintiffs allege

2    that all defendants had a fiduciary duty to plaintiffs, which they breached by fraudulently

3    assigning their rights in and securitizing the DOT and by attempting to foreclose on the

4    Riverview Property without the right to do so.  Id. at 25-27.

5          The elements of a fraud claim under California law are: (1) misrepresentation (false

6    representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3)

7    intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.  Lazar

8    v. Superior Court, 12 Cal. 4th 631, 638 (1996).  "[T]o establish a cause of action for fraud a

9    plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of

10   action."  Conrad v. Bank of America, 45 Cal. App. 4th 133, 156 (Cal. Ct. App. 1996).  "The

11   absence of any one of these required elements will preclude recovery."  Wilhelm v. Pray, Price,

12   Williams & Russell, 186 Cal. App. 3d 1324, 1332 (Cal. Ct. App. 1986).  To establish fraud

13   through concealment, a plaintiff must show that the defendant had a duty to disclose the

14   concealed facts.  OCM Principal Opportunities Fund v. CIBC World Mkts. Corp.,157 Cal. App.

15   4th 835, 845 (Cal. Ct. App. 2007).  "In addition, for a viable cause of action for fraud, the

16   pleading must show a cause and effect relationship between the fraud and damages sought;

17   otherwise no cause of action is stated."  Nagy v. Nagy, 210 Cal. App. 3d 1262, 1269 (Cal. Ct.

18   App. 1989); Zumbrun v. University of Southern California, 25 Cal. App. 3d 1, 12 (Cal. Ct. App.

19   1972).

20         Federal Rule of Civil Procedure 9(b), which provides a heightened pleading standard for

21   fraud claims, states: "In alleging fraud or mistake, a party must state with particularity the

22   circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a

23   person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  These circumstances include the

24   "'time, place, and specific content of the false representations as well as the identities of the

25   parties to the misrepresentations.'"  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per

26   curiam) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)); see also

27   Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be

28   accompanied by 'the who, what, when, where, and how' of the misconduct charged").  "Rule 9(b)

1  demands that the circumstances constituting the alleged fraud be specific enough to give

2  defendants notice of the particular misconduct . . . so that they can defend against the charge and

3  not just deny that they have done anything wrong."  Kearns, 567 F.3d at 1124.

4       As an initial matter, plaintiffs' allegations do not meet the specificity pleading

5  requirements of Federal Rule of Civil Procedure 9(b) for fraud claims.  Plaintiffs set forth none of

6  the "who, what, when, where, and how" of the misconduct giving rise to these claims.  Rather,

7  they merely lump all defendants together in each of their fraud claims and conclusorily allege that

8  they concealed facts relating to the securitization of the loan, "misrepresented that they are the

9  'holder and owner' of the Note and beneficiary of the [DOT]," and attempted to fraudulently

10  foreclose on the Riverview Property.  ECF No. 1-1 at 21-23, 25-27.  Plaintiffs in no way identify

11  the specific defendants and specific instances of alleged fraudulent conduct in a manner that

12  comports with Rule 9(b)'s specificity requirements.

13       Furthermore, with regard to their fraud in the concealment claim, plaintiffs cannot, as a

14  matter of law, establish that they suffered damages as a result of any concealment of the fact that

15  their mortgage was securitized.  "[S]ecuritization merely creates a separate contract, distinct from

16  plaintiff['s] debt obligations under the note and does not change the relationship of the parties in

17  any way."  Reyes v. GMAC Mortgage LLC, 2011 WL 1322775, at *3 (D. Nev. Apr. 5, 2011)

18  (dismissing fraud claim based on defendant's failure to disclose securitization of plaintiffs' home

19  loans because securitization did not alter the parties' relationship in any way).  Therefore, the

20  parties' rights and obligations regarding the Riverview Property mortgage loan were not impacted

21  in any meaningful manner by the fact that the loan was securitized or the terms of the separate

22  agreement underlying that securitization.  The mere fact that defendants allegedly concealed the

23  information concerning securitization of the loan could not have caused the damages plaintiffs

24  allege, which are based on defendants' actions in seeking to enforce the DOT.  Accordingly, the

25  information plaintiffs allege defendants concealed has no causal connection to the damages they

26  allege in the complaint.  See Nagy, 210 Cal. App. 3d at 1269 ("[T]he pleading must show a cause

27  and effect relationship between the fraud and damages sought . . . .").  Therefore, plaintiffs' claim

28  for fraud in the concealment is without merit as a matter of law and should be dismissed.  See

1    id. ("Fraudulent representations which work no damage cannot give rise to an action at law.").

2           Similarly, the complaint's allegations demonstrate that plaintiffs' fraud in the inducement

3    and constructive fraud claims, which are premised on the conclusory allegation that defendants

4    misrepresented that they had the right to foreclose under the DOT, fail to state a cognizable fraud

5    claim.  California courts have recognized that the comprehensive California foreclosure scheme

6    does not permit a general challenge to the authority of an entity to foreclose on a deed of trust,

7    absent a specific factual basis that demonstrates no authority.  See , e.g., Hinojosa v. Wells Fargo

8    Bank, 2012 WL 3313554, at *3 (N.D. Cal. Aug. 13, 2012); Mueller v. Bank of Am., N.A., 2012

9    WL 3134243, at *9 (S.D. Cal. Aug. 1, 2012); Visendi v. Bank of Am. Corp., 2012 WL 2377086

10   (E.D. Cal. June 21, 2012); Siliga v. Mortgage Electronic Registration Systems, 219 Cal. App. 4th

11   at 82-85 (Cal. Ct. App. 2013); Jenkins v. JPMorgan Chase Bank, N.A., 216 Cal. App. 4th 497,

12   512-13 (Cal. Ct. App. 2013); Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149,

13   1154-55 (Cal. Ct. App. 2011).

14          Here, plaintiffs' allegations fail to provide a factual basis demonstrating that defendants

15   did not have such authority. To the contrary, the documents attached to the complaint and

16   judicially-noticed documents demonstrate that defendants were either the beneficiary or trustee

17   under the DOT at various times after the origination of the mortgage loan, and, therefore, had the

18   authority to initiate foreclosure proceedings in the event of plaintiffs' default.  More specifically,

19   those documents show that the beneficial interest under DOT had been assigned to Nationstar,

20   with BDFTW acting as trustee, as of the time the Notice of Default was recorded.  ECF No. 1-1 at

21   51, 53, 55.  The documents also show a series of proper assignments among defendants that

22   resulted in those two defendants assuming those roles under the DOT by the time the Notice of

23   Default was recorded.  See id. at 35-55.  Plaintiffs' conclusory allegations that defendants had no

24   beneficial rights under the DOT and were not entitled to foreclose on the Riverview Property are

25   insufficient to overcome the alleged facts contained in these documents.  See Paulsen v. CNF,

26   Inc., 559 F.3d 1061, 1071 (9th Cir. 2009) (the court is "not . . . required to accept as true

27   conclusory allegations that are contradicted by documents referred to in the complaint, and [the

28   court does] not necessarily assume the truth of legal conclusions merely because they are cast in

1    the form of factual allegations").  Because the alleged facts show that defendants did have the

2    right to initiate foreclosure proceedings with regard to the Riverview Property after plaintiffs'

3    default, the factual allegations fail to plausibly support plaintiffs' claim that defendants

4    misrepresented their right to do so.  Accordingly, plaintiffs' fraud in the inducement and

5    constructive fraud claims fail as a matter of law based on the lack of plausible allegations

6    showing that defendants made a misrepresentation to plaintiffs, and, therefore, should be

7    dismissed.

8              6.  Claim for "Predatory Lending Practices"

9              For their seventh cause of action, plaintiffs allege that all defendants engaged in

10   "predatory lending practices" in violation of California Business and Professions Code § 17200,

11   *et seq.* and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA").  As an initial matter,

12   the court notes that this claim is a repeat of their fourth cause of action to the extent plaintiffs

13   premise their claim on California Business and Professions Code § 17200, *et seq.*, California's

14   UCL.  Accordingly, plaintiffs' claim is without merit to the extent it alleges defendants violated

15   the UCL for the same reasons discussed above with regard to plaintiffs' fourth cause of action.

16             While plaintiffs also allege that defendants' conduct violated the RFDCPA, their

17   "predatory lending practices" claim is not cognizable to the extent it is premised on that Act.

18   "The law is clear that foreclosing on a deed of trust does not invoke the statutory protections of

19   the RFDCPA."  Collins v. Power Default Servs., Inc., 2010 WL 234902, at *3 (N.D. Cal. Jan. 14,

20   2010) (collecting numerous cases).  "Foreclosure pursuant to a deed of trust does not constitute

21   debt collection under the RFDCPA."  Castaneda v. Saxon Mortgage Serve., Inc., 687 F. Supp. 2d

22   1191, 1197 (E.D. Cal. 2009); see also Gonzalez v. First Franklin Loan Servs., 2010 WL 144862,

23   at *7 (E.D. Cal. Jan. 11, 2010) ("Foreclosure related actions . . . do not implicate the RFDCPA.")

24   The conduct plaintiffs complain of concerns foreclosure related actions in connection with their

25   residential mortgage.  This conduct is not covered by the RFDCPA.  For this reason, plaintiff's

26   "predatory lending practices" claim is also without merit to the extent it is based on the RFDCPA.

27   Because plaintiffs provide no cognizable legal basis to substantiate their "predatory lending

28   practices" claim, it should be dismissed.

1     7.   Slander of Title Claim

2          Ninth, plaintiffs allege that defendants slandered plaintiffs' title to the Riverview Property

3     by recording the Notice of Default and Notice of Trustee's Sale.

4          "[S]lander or disparagement of title occurs when a person, without a privilege to do so,

5     publishes a false statement that disparages title to property and causes the owner thereof some

6     special pecuniary loss or damage."  Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings,

7     LLC, 205 Cal. App. 4th 999, 1030 (Cal. Ct. App. 2012).  In order to successfully allege a claim

8     for slander of title under California law, the plaintiff must be able to allege facts demonstrating

9     the following elements: (1) publication; (2) falsity; (3) absence of privilege; (4) disparagement of

10    the plaintiff's land which is relied upon by a third party and which results in (5) pecuniary loss.

11    Gudger v. Manton, 21 Cal.2d 537, 541, 134 P.2d 217 (1943), overruled on other grounds by

12    Albertson v. Raboff, 46 Cal.2d 375, 381, 295 P.2d 405 (1956).

13         "Any statutorily required mailings, publication, and delivery of notices in connection with

14    a non-judicial foreclosure, and the performance of any statutory procedures by a trustee and

15    beneficiary, are '"privileged communications under the qualified, common-interest privilege of

16    [California Civil Code] Section 47, subdivision (c)(1).'"  Ismail v. Wells Fargo Bank, N.A., 2013

17    WL 930611, at *6 (E.D. Cal. Mar. 8, 2013) (quoting Kachlon v. Markowitz, 168 Cal. App. 4th

18    316, 333 (Cal. Ct. App. 2008)).  Accordingly, a defendant is protected by a qualified privilege

19    when it publishes and delivers any notices in the foreclosure of a property, and in performing any

20    statutory foreclosure procedures.  In order to overcome this privilege, a plaintiff must make

21    affirmative allegations of actual malice.  See Smith v. Hatch, 271 Cal. App. 2d 39, 47 (Cal. Ct.

22    App. 1969).  Actual malice exists when "the publication was motivated by hatred or ill will

23    towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in

24    the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."

25    Kachlon, 168 Cal. App. 4th at 336 (citing Sanborn v. Chronicle Pub. Co., 18 Cal. 3d 406, 413

26    (1976)).

27    /////

28    /////

1   Here, the complaint presents no allegations beyond conclusory statements to indicate

2   defendants acted with malice in publishing the Notice of Default and Notice of Trustee's Sale.

3   (See ECF No. 1-1 at 22 ("Defendants knew the documents were false and created and published

4   them with malicious the intent to injure Plaintiff[s] and deprive them of their exclusive right, title,

5   and interest in the Property . . . .")).  Accordingly, plaintiffs fail to demonstrate that defendants

6   did not have a qualified privilege to publish the Notice of Default and Notice of Trustee's Sale.

7   Moreover, the documents attached to the complaint demonstrate that plaintiffs are in

8   default under the DOT.  ECF No. 1-1 at 55-57.  Even if the Notice of Default and Notice of Sale

9   contained information that failed to accurately depict the total amount of plaintiffs' indebtedness,

10   the recordation of these documents could not have damaged plaintiffs as they were in fact in

11   default.   Finally, plaintiffs fail to allege facts showing that they have suffered damages from

12   slander of title resulting from the recordation of the Notice of Sale outside of the conclusory

13   allegation that they "have incurred expenses in order to clear title to the Property."  ECF No. 1-1

14   at 28.  In short, plaintiffs' allegations fail to provide a cognizable basis to support their slander of

15   title claim.  Accordingly, that claim should be dismissed.

16   8.  Claim for Quiet Title

17   For their tenth claim, plaintiffs seek to quiet title to the Riverview Property on the basis

18   that defendants have no interest in the property.  The purpose of a quiet title action is to establish

19   one's title against adverse claims to real property.   Cal. Code Civ. Proc. § 760.020.  A basic

20   requirement of an action to quiet title is an allegation that plaintiffs "are the rightful owners of the

21   property, i.e., that they have satisfied their obligations under the Deed of Trust."  Kelley v.

22   Mortgage Elec. Reg. Sys., Inc., 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009).  "[A] mortgagor

23   cannot quiet his title against the mortgagee without paying the debt secured."  Watson v. MTC

24   Financial, Inc., 2009 WL 2151782 (E.D. Cal. Jul.17, 2009) (quoting Shimpones v. Stickney, 219

25   Cal. 637, 649 (1934)).  As discussed above, the allegations and judicially-noticed documents

26   establish that defendants engaged in proper assignments of beneficial interest and substitutions of

27   the trustee under the DOT, and therefore have the right to foreclose on the Riverview Property

28   upon plaintiffs' default.  Plaintiffs do not allege in their complaint that they have paid the debt

23

1   secured by the mortgage at issue.  To the contrary, the allegations of the complaint establish that

2   plaintiffs defaulted on their payment obligations to defendants under that mortgage and have not

3   yet remedied that deficiency, let alone paid the entirety of the remaining balance owed on the

4   mortgage, which is required to maintain a quiet title action.  See Watson, 2009 WL 2151782.

5   Accordingly, plaintiffs' claim for quiet title should be dismissed.

6           9.  Claim for Rescission

7           In their eleventh cause of action, plaintiffs claim that they are entitled to rescind their

8   mortgage loan.  "However, rescission is not a freestanding cause of action, but rather relief that

9   may be granted as a result of unlawful conduct."  Moreno v. Citibank, N.A., 2010 WL 1038222,

10  at *4 (N.D. Cal. Mar. 19, 2010); see also Cal. Civ. Code §§ 1689, 1691-92.  Accordingly, a claim

11  for rescission, standing by itself, cannot constitute a cognizable cause of action.  If plaintiffs

12  intend to seek rescission, they must state a claim for which rescission could be granted and plead

13  for such relief as a remedy for that claim.  However, because the complaint fails to state even a

14  single cognizable claim against defendants for the reasons discussed both above and below,

15  plaintiffs do not plead a cause of action warranting such relief.  Accordingly, plaintiffs' eleventh

16  cause of action should be dismissed without leave to amend.[15]

17          10. Claim for Declaratory Relief

18          Finally, plaintiffs assert that they are entitled to declaratory relief in the form of a

19  determination that plaintiffs hold exclusive possession of the Riverview Property and that

20  defendants hold no interest in that property.  Declaratory relief is not an independent claim, rather

21  it is a form of relief.  Santos v. Countrywide Home Loans, 2009 WL 3756337, at *5 (E.D. Cal.

22  Nov. 6, 2009) ("Declaratory and injunctive relief are not independent claims, rather they are

23  forms of relief.").  Therefore, standing alone, plaintiffs' twelfth cause of action fails to state a

24  cognizable claim.  Moreover, because the court finds that plaintiffs' complaint fails to assert even

25  a single cognizable cause of action for the reasons discussed above, plaintiffs are not entitled to

---

[15] Furthermore, plaintiffs appear to assert their claim for rescission only against defendant
Indymac.  ECF No. 1-1 at 30.  As discussed above, the court does not have jurisdiction over
plaintiffs' claims against that defendant as plaintiffs failed to satisfy the administrative exhaustion
requirements by not first filing their claims with the FDIC.

1  the declaratory relief they seek.  Accordingly, the court recommends that plaintiffs' claim for

2  declaratory relief be dismissed.[16]

3       III.    Conclusion

4       In sum, the court finds defendants' motions to dismiss and for judgment on the pleadings

5  to be meritorious as the allegations of plaintiffs' complaint fail to state even a single cognizable

6  cause of action.  However, based on the representations of the parties at the hearing on this

7  matter, particularly plaintiffs' statements that their payments under the mortgage loan, which

8  were allegedly paid using an automated payment system, may not have been properly credited by

9  defendants since the first alleged assignment of interest under the DOT, indicate that it is possible

10 that plaintiffs might be able to state a cognizable cause of action based on some of the defendants'

11 alleged conduct if given leave to amend their initial complaint.[17]  In particular, the complaint

12 shows that MERS assigned its interest under the DOT to Ocwen on July 15, 2015, Ocwen

13 assigned its interest under the DOT to Northstar on March 29, 2016, and BDFTW was substituted

14 in as trustee on April 5, 2016.  ECF No. 1-1 at 49, 51, 53.  Plaintiffs alleged at the hearing that

15 their automatic monthly payments under the mortgage loan were not being credited to their

16 account beginning as of the time of the initial transfer of interest, and the complaint shows that

17 Nationstar, by care of BDFTW, deemed plaintiffs in default as of April 8, 2016.[18]  Id. at 55.

18 Based on these additional allegations plaintiffs provided at the hearing, it appears that plaintiffs

19 may be able to state a cognizable cause of action against one or more of defendants Northstar,

20

21 [16] While the court recommends that plaintiffs' claim for declarative relief be dismissed insofar as
   it is asserted as its own independent claim, this does not mean that plaintiffs could not
22 conceivably be entitled to such relief in the event they are able to assert a cognizable cause of
   action in their amended pleading that warrants such a remedy.

23

24 [17] While the court may not consider allegations made outside of the complaint for purposes of
   considering the propriety of a Rule 12(b)(6) or 12(c) motion, it may consider such extrinsic
25 allegations when determining whether dismissal should be with or without prejudice.  See Broam
   v. Bogan, 320 F.3d 1023, 1026, n.2 (9th Cir. 2003); Orion Tire Corp. v. Goodyear Tire & Rubber
26 Co., 268 F.3d 1133, 1137-38 (9th Cir. 2001).

27 [18] Such allegations align with plaintiffs' factual allegation in the complaint that defendants
   "fail[ed] to properly and accurately credit payments made by Plaintiffs towards the loan."  ECF
28 No. 1-1 at 14.

MERS, Ocwen, and BDFTW.[19]  Accordingly, the court recommends that the complaint be dismissed, but with leave to amend with regard to those defendants.[20]  See Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137 (9th Cir. 2001) ("Where counsel is able to posit possible amendments that would be consistent with the operative complaint and could also possibly state a claim for relief, the complaint should not be dismissed on its face with prejudice.").

Nevertheless, with regard to defendant Indymac, the court recommends that defendant be dismissed from this action without leave to amend as the factual allegations of the complaint, the judicially-noticed documents, and plaintiffs' representations at the hearing make it clear that amendment would not cure the deficiencies of plaintiffs' claims with regard to that defendant for the reasons discussed above.  See Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989) (citing Foman v. Davis, 371 U.S. 178, 182 (1962) ("In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and *futility of the proposed amendment*." (emphasis added)).

Furthermore, given the parties representations at the hearing on defendants' motions, the court finds that a court-mediated settlement conference should be set in this matter as soon as practicable after plaintiffs have filed an amended complaint.  Accordingly, the court recommends

---

[19] While BDFTW is a nominal party pursuant to California Civil Code § 2924l, meaning it is not "not . . . required to participate any further in the action or proceeding, [and] shall not be subject to any monetary awards as and for damages, attorneys' fees or costs," it should still be required to remain as a defendant to this action as a nominal party as it has agreed to "be bound by any non-monetary order or judgment is issued by the court regarding [the subject] Deed of Trust," ECF No. 1-3 at 4, pursuant to its obligations as a nominal party under that statute.  See Cal. Civ. Code §§ 2924l(b), (d).

[20] Furthermore, it came to the court's attention during the hearing on defendants' motions that plaintiffs may have been receiving potentially erroneous, off-the-record legal assistance from another individual that may have hindered plaintiffs' ability to draft a pleading that accurately reflects the factual allegations on which this action is actually based.  See ECF No. 26. Accordingly, the court finds that permitting plaintiffs an opportunity to amend their complaint would also serve the ends of justice in this matter.

1   that all parties remaining in this action after an order regarding these findings and

2   recommendations is issued be directed to engage in a mandatory settlement conference set before

3   a randomly selected magistrate judge of this court.

4           Accordingly, IT IS HEREBY RECOMMENDED that:

5       1.  Defendants' motions to dismiss and for judgment on the pleadings (ECF Nos. 7, 10)

6           be granted in the following manner:

7           a.  Defendant Indymac Bank, F.S.B. be dismissed from this action without leave

8               to amend;

9           b.  Plaintiffs be granted an opportunity to file an amended complaint against

10              defendants Nationstar Mortgage, LLC, Mortgage Electronic Registration

11              Systems, Inc., Ocwen Loan Servicing, LLC, and Barrett Daffin Frappier

12              Treder & Weiss, LLP by no later than 30 days after an order regarding these

13              findings and recommendations is issued;

14      2.  A mandatory settlement conference between all parties remaining in this action be set

15          before a randomly selected magistrate judge other than the undersigned.

16          These findings and recommendations are submitted to the United States District Judge

17   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

18   after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

21   within the specified time may waive the right to appeal the District Court's order.  Martinez v.

22   Ylst, 951 F.2d 1153 (9th Cir. 1991).

23   Dated:  December 9, 2016

24                                              _____
                                                CAROLYN K. DELANEY
25                                              UNITED STATES MAGISTRATE JUDGE

26   11 davis2599.mtd

27

28

                                              27